IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:20-cv-00116-MR

| | |
|---|---|
| QUAMAINE DESHAWN CARMICHAEL, ) ) ) ) Plaintiff, ) ) vs. ) ) FNU MURPHY, et al., ) ) Defendants. ) _____ ) | **ORDER** |

**THIS MATTER** is before the Court on initial review of the Complaint [Doc. 1]. Also pending is Plaintiff's Motion for Service of Complaint [Doc. 8]. Plaintiff is proceeding *in forma pauperis*. [Doc. 7].

**I.   BACKGROUND**

*Pro se* incarcerated Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 for incidents that allegedly occurred at the Marion Correctional Institution. Liberally construing the Complaint, it appears that Plaintiff is also attempting to state a claim under the Americans With Disabilities Act ("ADA"). Plaintiff names as Defendants: Dr. Murphy, a mental health administrator; Julia Jenkins, a program director; D. Cothron, an assistant warden of programs, and H. Corpening, Marion C.I.'s warden.

Plaintiff alleges that Defendant Murphy arranged in late 2017 for Plaintiff to consult with a psychiatrist, who determined that medication was sufficient to treat Plaintiff's mental illness. Plaintiff was prescribed psychotropic medication in January 2018, and he was classified as Mental Health Level Three ("M-3"). [Doc. 1-1 at 1].

Prior to the M-3 classification, Plaintiff had been "coerced" to participate in Marion C.I's Rehabilitative Diversion Unit ("RDU"),[1] where he remained for approximately 10 months. [Doc. 1-1 at 3]. Plaintiff alleges that the RDU is not suitable for his mental health classification; that the "facility['s] designees"[2] are incapable of ensuring that Plaintiff's received his prescribed medication on a continual basis as ordered; and that Defendants helped other "similarly situated inmates" to be transported to "proper treatment centers for mental health purposes." [Doc. 1-1 at 2-3].

Plaintiff further alleges that he was an "individual with a disability" who was deprived of the opportunity to participate in the Therapeutic Diversion Unit ("TDU"), a special needs program for mentally ill offenders who are transitioning from disciplinary restrictions into regular population, which

---

[1] The RDU program at Marion "was created as part of NCDPS's recent policy reforms regarding restrictive housing in the North Carolina prisons." Covington v. Lassiter, No. 1:16-cv-00387-FDW, 2017 WL 3840280, at *5 (W.D.N.C. Sept. 1, 2017) (discussing RDU program at Marion C.I.).

[2] Plaintiff does not identify these individuals.

"deprived Plaintiff [of] the ability to receive proper therapy and services of a mental health Level 3 facility." [Doc. 1-1 at 2, 4].

Plaintiff alleges that he was denied reasonable accommodations for his disability after he made Dr. Murphy aware of the issue. He alleges that Defendant Jenkins, as the RDU administrator, has direct knowledge of RDU's structure and the clinical status for which the program was designed, and that "Plaintiff's change in acuity level mandated that Defendant [Jenkins] be made aware." [Doc. 1-1 at 2]. Plaintiff alleges that Defendant Cothron "is responsible for proper management of all institutional programs" at Marion C.I., and that Defendant Corpening "has final authority and responsibility for all matters occurring within the institution." [Id.].

As injury, Plaintiff alleges that his "condition worsened" such that he "lacks the ability to effectively amalgamate into daily activities and operations of normal life." [Doc. 1-1 at 5]. He further alleges that he suffered from mental and emotional injury due to solitary confinement, delayed rehabilitation, and being denied the opportunity to attend his father's funeral.[3] [Doc. 1-1 at 5]. Plaintiff seeks $300,000 in damages.

---

[3] Plaintiff alleges with regards to his father's funeral that: "Plaintiff sustained pain and suffering where denial of services prohibited him from attending funeral arrangements of his father as RDU sanction matrix prohibits such action. As well as emotional injury without injury incurred did delay rehabilitation and reform and closure towards first-degree family loss." [Doc. 1-1 at 5].

3

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).  Furthermore, a *pro se* complaint must be construed liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States,

and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

A § 1983 claim can be brought against a state official in three different capacities: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation." King, 825 F.3d at 223 (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)). Thus, the entity's "'policy or custom' must have played a part in the violation of federal law." Id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

5

It appears that Plaintiff is asserting his claims against Defendants Jenkins, Cothron, and Corpening under a theory of supervisory liability. However, Plaintiff fails to make any plausible allegations that any of these Defendants knew of a pervasive risk of constitutional injury or that any of these Defendants displayed deliberate indifference to or tacit authorization of their subordinates' allegedly wrongful conduct. The allegations as stated in Plaintiff's Complaint provide no basis for a § 1983 claim against these Defendants, and therefore the claims against them will be dismissed without prejudice.

To the extent that Plaintiff asserts a claim of a violation of due process, Plaintiff does not have a federally protected liberty interest in any particular housing or classification unless it exceeds the scope of his original sentence and imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472 (1995). "[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation) and the denial of privileges … are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and efficiently." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (*en banc*).

Plaintiff appears to allege that he was forced to participate in the RDU without due process. This claim fails because Plaintiff had no right to any particular classification during his imprisonment. Nor has he demonstrated that the conditions that he experienced in the RDU presented atypical and significant hardship in relation to the ordinary incidents of prison life. See, e.g., James-Bey v. N.C. Dep't of Public Safety, 2019 WL 5198490 (W.D.N.C. Oct. 15, 2019) (dismissing procedural due process RDU claim on initial review); Watson v. Jenkins, 2019 WL 4780860 (W.D.N.C. Sept. 30, 2019) (same). Therefore, to the extent that Plaintiff attempts to state a due process claim with regards to his placement in RDU, it will be dismissed.

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996). Prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer v. Brennan, 511 U.S. 825, 832-34 (1994). To establish the imposition of cruel and unusual punishment, a prisoner must

7

prove two elements: (1) "the deprivation of [a] basic human need was objectively sufficiently serious," and (2) "subjectively the officials act[ed] with a sufficiently culpable state of mind." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted)).

This constitutional guarantee encompasses a right to medical care for serious medical needs, including psychological needs. See Estelle, 429 U.S. at 103-04. To state a claim for deliberate indifference to a serious medical or psychological need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825.

8

However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

First, Plaintiff appears to allege that the conditions in the RDU program constituted cruel and unusual punishment. However, Plaintiff has failed to describe any conditions of the RDU that are sufficiently serious to rise to the level of an Eighth Amendment violation. Nor has Plaintiff alleged that any of the Defendants acted with a culpable state of mind. Therefore, this claim will be dismissed.

Second, Plaintiff appears to allege that Defendants were deliberately indifferent to a serious psychological need by depriving him of treatment in the TDU and failing to ensure he received his prescribed medication as ordered. Although Plaintiff feels that RDU is unsuitable for him and he wanted to be placed in the TDU instead, his treatment preferences do not form the basis of a deliberate indifference claim, even if his psychological condition is as serious as he asserts. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir.1985) (a "[d]isagreement[ ] between an inmate and a physician over the inmate's proper medical care," has been consistently found to fall short of showing deliberate indifference). Plaintiff's allegation that Marion C.I. personnel were incapable of administering his medication as prescribed is too vague and conclusory to proceed. Plaintiff does not allege that any

9

Defendant personally failed to provide him with the medication as prescribed or that they were even aware of any problems with his medication, or that any issues with his medication were anything more than negligent. Therefore, Plaintiff's deliberate indifference claims will be dismissed.

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Plaintiff alleges, in an entirely conclusory manner, that Defendants aided similarly situated prisoners to be transferred out of Marion C.I. However, Plaintiff fails to identify his own psychological condition, identify other inmates with a similar condition, or allege that any alleged

10

Case 1:20-cv-00116-MR Document 9 Filed 07/24/20 Page 10 of 12

discrimination was purposeful. Therefore, Plaintiff's equal protection claim will be dismissed.

To state a claim under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. See Constantine v. George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005); Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131(2).

Assuming *arguendo* that Plaintiff's unspecified psychological condition is a disability under the ADA, he has failed to allege that he is qualified to participate in the TDU or any other program from which he was excluded, or that such exclusion was due to his alleged disability. Plaintiff has thus failed to set forth an ADA violation and this claim will be dismissed.

Plaintiff's Motion for Service of Complaint [Doc. 8] will be denied as moot because the Complaint has failed to pass initial review.

## IV. CONCLUSION

In sum, Plaintiff has failed to state a claim against any Defendant. The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to state a claim upon which relief can be granted. Should Plaintiff fail to timely amend his Complaint, this action will be dismissed without prejudice and without further notice to Plaintiff.

**IT IS, THEREFORE, ORDERED** that Plaintiff shall have thirty (30) days in which to amend the Complaint in accordance with the terms of this Order. If Plaintiff fails to amend the Complaint in accordance with this Order and within the time limit set by the Court, this action will be dismissed without prejudice and without further notice to Plaintiff.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Service of Complaint [Doc. 8] is **DENIED** as moot.

**IT IS SO ORDERED.**

Signed: July 24, 2020

Martin Reidinger
Chief United States District Judge